CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 13 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MERAL, INC., | ) |
| | ) |
| Appellant, | ) Civil Action No. 7:16CV00059 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| XINERGY, LTD., et al., | ) By: Hon. Glen E. Conrad |
| | ) Chief United States District Judge |
| Appellees. | ) |

In this appeal from the United States Bankruptcy Court for the Western District of Virginia, Meral, Inc. ("Meral") seeks review of the bankruptcy court's order sustaining an objection to a claim filed by Meral and denying Meral's motion to lift the automatic stay. For the reasons that follow, the bankruptcy court's decision will be affirmed.

## Background

Meral, a West Virginia Corporation, was the original lessee under a coal mining lease with WPP LLC ("WPP"), dated August 13, 2008, and a coal load-out facility lease, dated November 30, 2009 (collectively, the "Leases"). On January 31, 2011, Meral entered into an asset purchase agreement (the "APA") with South Fork Coal Company, LLC ("South Fork"), a subsidiary of Xinergy, Ltd. ("Xinergy"), pursuant to which South Fork purchased certain property from Meral, including all of Meral's "rights, title and interest in . . . the Leases . . . ." A084.[1] On May 5, 2011, a memorandum of the original lease between Meral and WPP (the "Memorandum of Lease") was recorded in the Greenbrier County Clerk's Office in Lewisburg, West Virginia. The APA, however, was not recorded.

---

[1] Citations to "A" are to the appendix submitted by the appellees, which contains both documents that the appellant intended to include in its own appendix. See Appellant's Br. at iii.

Under the APA, subject to certain limited exceptions, South Fork "assume[d] and be[came] responsible for . . . all liabilities and obligations of [Meral] under the Leases . . . ." A085. The Leases were assigned to South Fork with the permission of WPP, pursuant to a Consent, Assignment, and Assumption Agreement (the "Assumption Agreement") executed by Meral, South Fork, and WPP. In paragraph 8 of the Assumption Agreement, WPP consented to the assignment and assumption of the Leases, and "relieve[d], release[d], and discharge[d] [Meral] . . . from its obligations thereunder . . . ." A216.

In exchange for the sale and assignment of the Leases, South Fork agreed to make several cash payments to Meral, including $1,700,000.00 on the closing date, $2,500,000.00 upon issuance of certain required permits for conducting coal mining operations on the property subject to the Leases, and $1,000,000.00 eighteen calendar months thereafter. In addition, South Fork agreed to make certain royalty payments to Meral from the sale of coal.

Section 3(a)(vii) of the APA provides certain remedies to Meral upon default of South Fork's payment obligations. Specifically, following an unsuccessful arbitration of any payment dispute:

> Seller [Meral] shall have the right to declare all of the rights of Purchaser [South Fork] in the Reserve Area created by this Agreement and the Consent, Assignment and Assumption Agreements terminated and Seller shall be entitled to enter the premises of the Leases and to exclude Purchaser therefrom and to hold the same, together with all machinery, equipment, tools and other property therein and thereon which are free and clear of any and all liens and encumbrances, including permits (Purchaser agrees to transfer and assign all permits to Seller), so that Seller can immediately maintain operating the mines located on the premises of the Leases, if Seller so elects. The maximum value of machinery, equipment, tools and other property that Seller may claim any right, title and interest to pursuant to this Section 3(a)(vii) is $5,000,000.00.

A087. Section 3(a)(vii) goes on to provide as follows:

> This Section 3(a)(vii) shall not be constructed as (i) a lien upon any of the real, personal or mixed property of Purchaser or its affiliates or a security interest granted by Purchaser therein, or, (ii) a prohibition against the granting by

2

> Purchaser or its affiliates of a lien or other security interest in their real, personal or mixed property.

Id.

On April 6, 2015, Xinergy and certain affiliated entities, including South Fork, filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On July 31, 2015, Meral filed a proof of claim (Claim No. 1232) in the bankruptcy case, which it designated as a secured claim in the amount of $671,812.14. On November 6, 2015, the debtors filed an omnibus objection to claims, in which they sought to reclassify Meral's claim as a general unsecured claim. On November 19, 2015, Meral filed a response to the omnibus objection. Meral also filed a motion to lift the automatic stay imposed by 11 U.S.C. § 362(a), citing a lack of adequate protection. The debtors opposed that motion.

On December 8, 2015, the bankruptcy court held a hearing on the debtors' omnibus objection and Meral's motion to lift the automatic stay. At the conclusion of the hearing, the bankruptcy court ordered supplemental briefing on the issues raised by the parties.

On February 3, 2016, the bankruptcy court issued a memorandum opinion and order sustaining the debtors' objection to Meral's claim and reclassifying the claim as a general unsecured claim. Additionally, based on its conclusion that Meral does not have a security interest in the debtors' property, the bankruptcy court denied Meral's motion to lift the automatic stay.

On February 15, 2016, Meral filed the instant appeal. The parties' briefing was completed on July 8, 2016. Since that time, the bankruptcy court has issued a final decree and order closing the debtors' Chapter 11 cases.

The appeal has been fully briefed, and the court heard oral argument on November 29, 2016. Accordingly, the matter is ripe for review.

3

## Standard of Review

This court has appellate jurisdiction over the matter pursuant to 28 U.S.C. § 158(a). On appeal, the court reviews the bankruptcy court's factual findings for clear error and its legal conclusions de novo. In re Kielisch, 258 F.3d 315, 319 (4th Cir. 2001).

## Discussion

### I. Equitable Mootness

As a preliminary matter, the appellees urge the court to dismiss Meral's appeal as moot on the grounds that Meral did not seek a stay of the bankruptcy proceedings pending appeal, and the bankruptcy plan has been substantially consummated. Although it is true that this court "may dismiss an appeal as equitably moot when it becomes impractical and imprudent to upset the plan of reorganization at [a] late date," Behrmann v. Nat'l Heritage Found., Inc., 663 F.3d 704, 713 (4th Cir. 2011) (citation and internal quotation marks omitted), the equitable mootness doctrine is prudential rather than jurisdictional. Id.; see also In re Vineyard Bay Dev. Co., 132 F.3d 269, 271 (5th Cir. 1998). Because the court concludes that the decision of the bankruptcy court should be affirmed, and no interference with the confirmed plan will result from the disposition of this appeal, the court proceeds to address the merits.

### II. Objection to Meral's Claim

Section 501 of the Bankruptcy Code authorizes any creditor of an estate to file a proof of claim. See 11 U.S.C. § 501(a). Section 502 provides that a proof of claim "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If such party objects, the court, after notice and a hearing, must determine the amount and validity of the claim. 11 U.S.C. § 502(b).

"The Bankruptcy Code establishes a burden-shifting framework for proving the amount and validity of a claim." In re Hartford Sands Inc., 372 F.3d 637, 640 (4th Cir. 2004). When a claimant files a proof of claim with all of the required supporting documentation, it is prima facie

4

Case 7:16-cv-00059-GEC  Document 24  Filed 12/13/16  Page 4 of 9  Pageid#: 1291

evidence of the claim's validity and the amount owed by the debtor. In re Falwell, 434 B.R. 779, 783 (Bankr. W.D. Va. 2009); see also Fed. R. Bankr. P. 3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."). "The burden then shifts to the debtor to object to the claim," and to "introduce evidence to rebut the claim's presumptive validity." Hartford Sands, 372 F.3d at 640. Such evidence "must be sufficient to demonstrate the existence of a true dispute and must have probative force equal to the contents of the claim." Falwell, 434 B.R. at 784 (emphasis in original). "If the debtor offers such evidence, the burden shifts back to the creditor to produce evidence meeting the objections and establishing the claim." Id.

In this case, Meral filed Claim No. 1232, in the amount of $671,812.14, on July 31, 2015. Meral designated the claim as a secured claim based on the APA. However, Meral did not provide a copy of the APA as supporting documentation. Consequently, the claim was not entitled to a presumption of validity, and the burden remained on Meral to prove the validity of its alleged security interest by a preponderance of the evidence. Hartford Sands, 372 F.3d at 640; see also In re Andrews, 394 B.R. 384, 389 (Bankr. E.D. Va. 2008).

Both sides agree that for a security interest to be valid and enforceable against a debtor, the agreement or other document intended to establish a security interest must contain a "written expression by the debtor granting a security interest." In re Modafferi, 45 B.R. 370, 373 (Bankr. S.D.N.Y. Jan. 9, 1985). This required "granting" language must "demonstrate a present intent to pledge collateral." Id.; see also Transp. Equip. Co. v. Guaranty State Bank, 518 F.2d 377, 380 (10th Cir. 1975) (noting that courts "almost uniformly come to the conclusion that in order for a security agreement to be effective it must contain language which specifically creates or grants a security interest in the collateral described"); In re Rowe, 369 B.R. 73, 77 (Bankr. D. Mass. 2007) ("Even where a document lists something as 'collateral,' . . . there must be some granting

5

language to find that the creditor holds a security interest in it."). "While there are no magic words which create a security interest[,] there must be language in the instrument which leads to the logical conclusion that it was the intention of the parties that a security interest be created." Mitchell v. Shepherd Mall State Bank, 458 F.2d 700, 703 (10th Cir. 1972) (citation and internal quotation marks omitted); see also In re Hoyt's, Inc., 117 B.R. 226, 230 (Bankr. N.D. W. Va. 1990) ("In the absence of a writing evidencing the intent of the debtor to grant a creditor a security interest in certain property to secure a specific obligation, the Court cannot infer a security agreement.").

The parties also agree that under West Virginia law, which governs the interpretation of the APA, it is for the court to determine whether the terms of an agreement are unambiguous and, if so, to construe the agreement according to its plain meaning. Fraternal Order of Police, Lodge No. 69 v. City of Fairmont, 468 S.E.2d 712, 715 (W. Va. 1996). "[The court's] task is not to rewrite the terms of the contract between the parties; instead, [the court is] to enforce it as written." Id. at 716. "If language in a contract is found to be plain and unambiguous, such language should be applied according to such meaning." Id.

In the present appeal, Meral argues, as it did before the bankruptcy court, that language in § 3(a)(vii) of the APA, which provides certain remedies upon default, grants Meral a security interest. Meral specifically cites to the portion of the section that grants it the right to "enter the premises of the Leases and to exclude [the Debtors] therefrom and . . . immediately maintain operating the mines located on the premises of the Leases . . . ." A087.

After carefully considering the contractual language at issue and the parties' arguments, the court agrees with the appellees that the language cited by Meral does not "lead[] to the logical conclusion that it was the intention of the parties that a security interest be created." Mitchell, 458 F.2d at 703. Additionally, and perhaps most importantly, the same section of the

6

APA contains language that clearly and unambiguously leads to the opposite conclusion: "This Section 3(a)(vii) shall not be constructed as . . . a lien upon any of the real, personal or mixed property of [South Fork] or its affiliates or a security interest granted by [South Fork] therein . . . ." A087 (emphasis added). Based on the plain language of this subsequent clause, the court is of the opinion that the bankruptcy court correctly concluded that § 3(a)(vii) of the APA does not grant Meral a security interest in the debtors' property. Likewise, the bankruptcy court properly declined to rewrite the APA to provide such interest. See Faith United Methodist Church v. Morgan, 745 S.E.2d 461, 482 (W.Va. 2013) ("We have emphasized that courts cannot rewrite a contract or deed that plainly expresses the parties' intent[.]"); Fraternal Order of Police, Lodge No. 69, 468 S.E.2d at 717 ("[Courts] cannot rewrite the language of the contract under the pretense of construction for the defendants to receive a more favorable result.").

Moreover, even if the APA could be construed to grant Meral a security interest, the record is devoid of any evidence establishing that Meral perfected such interest, as required by Federal Rule of Bankruptcy Procedure 3001(d). Rule 3001(d) provides that "[i]f a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected." Fed. R. Bankr. P. 3001(d). To determine whether a security interest has been perfected, courts look to the applicable state law. In re DBSI, Inc., 432 B.R. 126, 132 (D. Del. 2010). Under West Virginia law, to perfect a security interest in real property, including an interest in leases, the purported holder of the security interest must record documentation evidencing its interest "in the county wherein the property . . . may be." W. Va. Code § 40-1-9. In the instant case, the record contains no evidence that Meral made such filing. Although Meral correctly points out that the Memorandum of Lease memorializing the original lease between Meral and WPP was recorded in the Greenbrier County Clerk's Office, that document does not reference any purported security interest granted to Meral by South Fork. In

7

the absence of any other evidence, the court concludes that Meral failed to establish that it holds a perfected security interest under applicable law.

For these reasons, the bankruptcy court did not err in sustaining the debtors' objection to Proof of Claim No. 1232. The bankruptcy court's decision to reclassify Claim No. 1232 as an unsecured claim must be affirmed.[2]

### III. Motion to Lift the Stay

Meral also appealed the bankruptcy court's decision to deny Meral's motion to lift the automatic stay. Under the Bankruptcy Code, the filing of a bankruptcy petition operates to stay "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy proceeding], or to recover a claim against the debtor that

---

[2] During oral argument, Meral argued for the first time that the bankruptcy court should have used its equitable powers under 11 U.S.C. § 105(a) to afford the relief sought by Meral. Even assuming that Meral properly raised the issue, the argument is without merit. Section 105(a) authorizes a bankruptcy court to "issue any order, process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). "While the equitable powers emanating from § 105(a) are quite important in the general bankruptcy scheme, . . . these equitable powers are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules." Official Committee of Equity Sec. Holders v. Mabey, 832 F.2d 299, 302 (4th Cir. 1987). Instead, the powers granted by § 105(a) must be exercised in a manner that is consistent with the Bankruptcy Code. See In re Oxford Mgmt., 4 F.3d 1329, 1334 (5th Cir. 1993) ("[Section 105] does not authorize bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.") (citation and internal quotation marks omitted). Because Meral failed to establish the existence of a perfected security interest under the applicable provisions of the bankruptcy statutes and rules, neither this court nor the bankruptcy court has the authority under § 105(a) to elevate Meral's status over other unsecured creditors. See id. ("By commanding payment, the bankruptcy court elevated the status of the appellees above that of the other general unsecured creditors and deviated from the pro rata scheme of distribution envisioned by the Code. This order effectuated an impermissible substantive alteration of the Code's provisions. For this reason, we find that the bankruptcy court was in error when it used its equity powers to command the payment of the appellees' commissions.").

arose before the commencement of the [bankruptcy proceeding.]" 11 U.S.C. § 362(a)(1). However, the Code also provides that a party in interest may move for relief from the stay under certain circumstances. Under § 362(d)(1), the bankruptcy court has the discretion to lift the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

A party seeking relief from the automatic stay under subsection (d)(1) "has the burden of showing the existence, the validity, and the perfection of its secured claim against the property." In re Keen, No. 13-71705, 2014 U.S. Bankr. LEXIS 4896, at *19 (Bankr. W.D. Va. Dec. 3, 2014) (citation and internal quotation marks omitted); see also In re Utah Aircraft Alliance, 342 B.R. 327, 337 (B.A.P. 10th Cir. 2006) (noting that "the majority of courts have concluded that Section 362(d)(1) . . . addresses only the rights of secured creditors"). Because the bankruptcy court correctly held that Meral lacked a perfected security interest, it follows that the bankruptcy court did not abuse its discretion in denying Meral's motion to lift the automatic stay.

## Conclusion

For the reasons stated, the court concludes that the bankruptcy court's decision must be affirmed. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 13th day of December, 2016.

_____
Chief United States District Judge

9

Case 7:16-cv-00059-GEC Document 24 Filed 12/13/16 Page 9 of 9 Pageid#: 1296